**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DAVID CHMIEL, | ) |
| | ) |
| *Plaintiff,* | ) |
| | ) |
| v. | ) |
| | ) |
| PENNSYLVANIA DEPARTMENT OF | ) |
| CORRECTIONS; CHCA KYLE GUTH; CHCA | )   Civil No. |
| WILLIAM NICHOLSON; DR. BYUNGHAK JIN; | ) |
| DR. RUSSELL; DR. ARTHUR SANTOS; DR. | ) |
| MIN HI PARK; DR. PAUL DASCANI; DR. | ) |
| ROBERT VALLEY; DR. JOHN ROBINSON; | ) |
| MICHAEL HICE; DR. SMYTH; JOHN DOE, | ) |
| Medical Director | ) |
| | ) |
| *Defendants.* | ) |

**COMPLAINT**

**INTRODUCTION**

1.      Plaintiff David Chmiel ("Plaintiff Chmiel") has suffered from Type 2 Diabetes for almost two decades. Defendants knew this, and they knew that Plaintiff Chmiel was at high risk for developing diabetic retinopathy—a condition frequently associated with diabetes and that leads to blindness.  Defendants either failed to conduct the proper diagnostic testing to detect this condition or they chose to deny him appropriate medical treatment for it.

2.      Defendants' failure to treat Plaintiff Chmiel's serious medical needs has already caused him serious vision loss, and is currently causing him to go blind. As a result, he cannot, amongst other things, read books in SCI Greene's library, read legal mail, participate in his own defense, take a prison job, go out to the prison yard, or apply his own wound dressings.

1

**JURISDICTION AND VENUE**

3.      Plaintiff Chmiel brings this action pursuant to 42 U.S.C. § 1983, the Eighth Amendment of the United States Constitution, the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101 et seq., and Section 504 of the Rehabilitation Act, 29 U.S.C. § 794(a).

4.      This court has jurisdiction under 28 U.S.C. § 1331 over the constitutional claims as well as those arising under 42 U.S.C. § 1983, 42 U.S.C. § 12132, and 29 U.S.C. § 794.

5.      Venue is appropriate in this district pursuant to 28 U.S.C. 1391(b)(2) because substantial events at issue in this litigation occurred in Greene County, Pennsylvania, within the Western District of Pennsylvania.

**PLAINTIFF**

6.      Plaintiff David Chmiel is an adult man currently incarcerated at the State Correctional Institution at Greene ("SCI Greene") who has been diagnosed with Type 2 Diabetes.

**DEFENDANTS**

7.      Defendant Pennsylvania Department of Corrections (DOC) is an agency of the Commonwealth of Pennsylvania that operates SCI Greene, among other correctional institutions. The principal office for the DOC is located in Mechanicsburg, Pennsylvania. The DOC is responsible for providing adequate medical health services to and creating policies that ensure appropriate medical treatment to Plaintiff Chmiel.  The DOC receives federal funding.

8.      Defendant Kyle Guth was a Correctional Health Care Administrator (CHCA) at SCI Greene and an employee at the Department of Corrections. As CHCA, he is responsible for the oversight of health care at SCI Greene. Defendant Guth is sued in his individual capacity. At all relevant times, he acted under color of state law.

2

9.      Defendant William Nicholson is a Correctional Health Care Administrator (CHCA) at SCI Greene and an employee at the Department of Corrections. As CHCA, he is responsible for the oversight of health care at SCI Greene. Defendant Nicholson is sued in his official and individual capacities. At all relevant times, he has acted and will continue to act under color of state law.

10.      Defendant Dr. Byunghak Jin was the medical director at SCI Greene. As the medical director, he was responsible for overseeing all medical staff and ensuring that adequate medical care was provided to all individuals incarcerated at SCI Greene.  He is sued in his individual capacity. At all relevant times, he acted under color of state law.

11.      Defendant Dr. Russell was a physician at SCI Greene.  He is sued in his individual capacity.  At all relevant times he acted under color of state law.

12.      Defendant Dr. Arthur Santos was a physician at SCI Greene.  He is sued in his individual capacity.  At all relevant times he acted under color of state law.

13.      Defendant Dr. Min Hi Park was a physician at SCI Greene. He is sued in his individual capacity. At all relevant times, he acted under color of state law.

14.      Defendant Dr. Paul Dascani was a physician at SCI Greene. He is sued in his individual capacity. At all relevant times, he acted under color of state law.

15.      Defendant Dr. Robert Valley was a physician at SCI Greene. He is sued in his individual capacity. At all relevant times, he acted under color of state law.

16.      Defendant Dr. John Robinson was a physician at SCI Greene. He is sued in his individual capacity. At all relevant times, he acted under color of state law.

17.      Defendant Michael Hice was a phlebotomist at SCI Greene. He is sued in his individual capacity. At all relevant times, he acted under color of state law.

18.     Defendant Smyth is a physician at SCI Greene.  She is sued in her official and individual capacities.  At all relevant times, she has acted and will continue to act under color of state law.

19.     Defendant John Doe is the current medical director at SCI Greene.  As the medical director, he is responsible for overseeing all medical staff and ensuring that adequate medical care is provided to all individuals incarcerated at SCI Greene.  He is sued in his individual and official capacities.  At all relevant times, he has acted and will continue to act under color of state law.

**STATEMENT OF FACTS**

Diabetic Retinopathy

20.     Type 2 Diabetes is a life-threatening disease that can cause serious medical complications, especially when not carefully managed and treated.

21.     Diabetic retinopathy is a condition frequently associated with diabetes. Diabetic retinopathy, if detected through proper diagnostic procedures, is treatable.  Defendants here either failed to conduct the proper diagnostic procedures or ignored the results and failed to provide any treatment whatsoever until it was too late to save Plaintiff Chmiel's vision.

22.     The National Eye Institute defines diabetic retinopathy as a condition that "involves changes to retinal blood vessels that can cause them to bleed or leak fluid, distorting vision."

23.     According to the American Diabetes Association, diabetic retinopathy is the "most frequent cause of new cases of blindness among adults aged 20-74 years in developed countries."

24.     And according to the National Eye Institute, diabetic retinopathy is the "most common cause of vision loss among people with diabetes."

25.    To screen for and prevent diabetic retinopathy, the American Diabetes Association urges medical providers to regularly administer a comprehensive dilated eye exam to Type 2 Diabetes patients.

26.    According to the National Eye Institute, the comprehensive eye exam for diabetic patients has three components. The first is a visual acuity test that measures a patient's ability to see at a distance. The second is use of a tonometer to measure the patient's internal eye pressure.

27.    The third component is the dilated eye exam. This exam requires an eye care professional to place drops in the patient's eyes to dilate their pupils. Next, the professional performs a fundoscopy, which involves using a "special magnifying lens to examine your retina and optic nerve for signs of damage and other eye problems."

28.    The fundoscopy is thus an essential diagnostic tool to ensure proper treatment of patients with Type 2 Diabetes.

29.    According to the American Diabetes Association's *Standards of Medical Care in Diabetes—2018*, Type 2 Diabetes patients should receive "an initial dilated and comprehensive eye examination by an ophthalmologist or optometrist at the time of the diabetes diagnosis." Diabetic patients who show no signs of retinopathy can receive exams at least every 1-2 years. But diabetic patients who manifest "any level of diabetic retinopathy" should receive "subsequent dilated retinal examinations…at least annually by an ophthalmologist or optometrist."

30.    Further, if a patient's retinopathy "is progressing or sight-threatening," they should receive examinations "more frequently."

31.     The American Diabetes Association warns that "[h]aving your regular doctor look at your eyes is not enough." Rather, "[o]nly optometrists and ophthalmologists can detect the signs of retinopathy. Only ophthalmologists can treat retinopathy."

32.     The American Diabetes Association thus does not recommend that a general practitioner, nurse, or physician's assistant administer the comprehensive eye exam.   Thus, having a general practitioner, nurse, or physician's assistant administer an eye exam does not meet the standard of care that would detect signs of retinopathy.

33.     The American Diabetes Association specifies that mere "retinal photography…is not a substitute for a comprehensive eye exam."

34.     If diabetic patients do not receive a regular fundoscopy and proper treatment, their retinopathy can progress to proliferative diabetic retinopathy. At this stage, Type 2 Diabetes patients face a serious risk of retinal detachment and permanent vision loss.


Defendants' Failure to Treat Plaintiff Chmiel's Diabetic Retinopathy

35.     Plaintiff Chmiel has been incarcerated at SCI Greene for about 16 years.

36.     As early as 1999, Plaintiff Chmiel was diagnosed with Type 2 Diabetes while incarcerated within a DOC institution.

37.     Plaintiff Chmiel frequently complained to medical personnel about his eyesight while incarcerated at SCI Greene.   In or around December 2002, when Plaintiff Chmiel was first transferred to SCI Greene, Defendant Dr. Russell performed a fundoscopy on Plaintiff Chmiel. Another fundoscopy was performed by Dr. Russell in 2008.

38.     Thereafter, the only eye exams any Defendant performed on Plaintiff Chmiel were Snellen tests, which do not involve either dilation or examination of the retina or optic nerve.

39.     As his vision deteriorated, Dr. Russell simply wrote Plaintiff Chmiel prescriptions for glasses of increasing strength, which treated the symptom (poor vision) but not the underlying problem (retinopathy).

40.     SCI Greene records show that medical staff including Defendants Drs. Min Hi Park, Byunghak Jin, and Paul Dascani characterized Plaintiff Chmiel's diabetes as poorly controlled or uncontrolled.

41.     Defendants Drs. Russell, Santos, Jin, Park, Dascani, Valley, Robinson, and Smyth each treated Plaintiff Chmiel and had access to his medical records.

42.     These Defendants—who were medical professionals—thus knew that Plaintiff Chmiel was diabetic, that his diabetes was poorly controlled, and they knew or should have known that Plaintiff Chmiel was at a greater risk for developing severe diabetic retinopathy.

43.     Despite their awareness of Plaintiff Chmiel's high risk for diabetic retinopathy, Defendants deliberately chose not to administer an annual fundoscopy to Plaintiff Chmiel—the best tool for screening and preventing this condition.

44.     Defendants Jin and Park each examined Plaintiff Chmiel at the chronic care clinic and appear to have ordered "diabetic eye examinations" for Plaintiff Chmiel.

45.     However these examinations never occurred and the Defendants never took any action to follow up or otherwise ensure that Plaintiff Chmiel received necessary medical care. As a result, Plaintiff Chmiel did not receive a timely diagnosis or any treatment for his retinopathy.

46.     Defendant Dascani also examined Plaintiff Chmiel at the chronic care clinic but did not even order a diabetic eye exam. As a result, Plaintiff Chmiel did not receive a timely diagnosis or any treatment for his retinopathy.

47.    Defendants Guth, Nicholson, and Hice all refused Plaintiff Chmiel access to necessary medical care by refusing to allow him to schedule medical appointments.

48.    Defendants knew or should have known that Plaintiff Chmiel never received proper medical care. Their subsequent failure to ensure that Plaintiff Chmiel received proper treatment was thus deliberate indifference to his serious medical needs.

49.    As a direct result of Defendants' denial of proper medical treatment, Plaintiff Chmiel developed diabetic retinopathy, putting him at grave risk of permanent vision loss.

50.    In approximately October of 2016, Plaintiff Chmiel was referred by Dr. Russell to outside medical care and was diagnosed by an ophthalmologist with "early diabetic retinopathy and cataract in both eyes" in January 2017.

51.    By then, Plaintiff Chmiel's left eye was seriously deteriorating. A month after his initial diagnosis, a surgeon performing Plaintiff Chmiel's double eye laser surgery told him that "it may be to[o] late to save [Chmiel's] left-Eye" and asked him "why did it take so long to bring me to get my eyes check[ed]."

52.    Since that time, Plaintiff Chmiel's condition has only worsened, leaving Mr. Chmiel essentially blind in one eye by March 2017.

53.    In March 2017, he was diagnosed with proliferative diabetic retinopathy—the most advanced form of this condition.

54.    He was also diagnosed with "traction retinal detachment" in his left eye.

55.    Plaintiff Chmiel subsequently received an even worse diagnosis: "[H]igh risk proliferative diabetic retinopathy" and a "[c]ombined tractional and rhegmatogenous retinal detachment" in his left eye.

56.    He was also noted as having "decreased vision."

8

57.     Upon information and belief, it is standard practice for SCI Greene to deny fundoscopies to high risk diabetic patients like Mr. Chmiel.

58.     Upon information and belief, Defendants Pennsylvania Department of Corrections, Kyle Guth, William Nicholson, Bygunhuk Jin, and John Doe are aware of this practice and approve its continued implementation despite knowing that individuals with diabetes such as Plaintiff Chmiel should receive comprehensive eye exams, including fundoscopies, on at least a biannual basis.

59.     Due to Defendants' deliberate indifference to his serious medical needs, Plaintiff Chmiel suffers from diabetic retinopathy, a preventable condition.

60.     Upon information and belief, Defendants do not deny proper chronic care or regular diagnostic exams wholesale to prisoners suffering from other chronic conditions.

61.     Defendants' failure to provide proper chronic care to Plaintiff Chmiel, and upon information and belief, other diabetic prisoners, owes solely to his diagnosis as a diabetic.

The Consequences of Defendants' Failure to Provide Appropriate Care and Accommodations

62.     Plaintiff Chmiel's proliferative diabetic retinopathy worsens his already-poor vision and increases his risk of permanent vision loss.

63.     As a result of Defendants' failure to provide appropriate diagnostic testing and treatment, Plaintiff Chmiel is now blind in his left eye and has seriously impaired vision in his right eye.

64.     Plaintiff Chmiel's condition, and Defendant DOC's failure to provide him with appropriate accommodations, prevents him from receiving equal benefit from prison services and programs.

65.     Plaintiff Chmiel is unable to read books that are available in SCI Greene's library.

66.     He cannot read legal mail or participate in his on-going habeas proceedings.

67.     Due to his severe vision loss it is difficult for him to ambulate.

68.     He cannot take a prison job for which he is otherwise qualified due to his vision and mobility problems.

69.     Plaintiff Chmiel cannot go out to the prison yard due to his limited mobility and prison staff refuse to assist him in his wheelchair to the yard.

70.     He also has difficulty bathing in the prison showers.

71.     His vision loss has prevented him from being able to dress the wounds on his legs or otherwise participate in his own care.

72.     Further, Plaintiff Chmiel's severe vision impairment has made him less self-sufficient.

73.     Plaintiff Chmiel's Type 2 Diabetes substantially impacts his major life activities—including the functioning of his endocrine system—and makes him a qualified individual with a disability under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

74.     Plaintiff Chmiel's diabetic retinopathy substantially impacts his major life activities — including loss of vision and the inability to care for himself — and makes him a qualified individual with a disability under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

75.     Defendants' discriminatory denial of medical care and appropriate accommodations thus causes Plaintiff Chmiel to be excluded from SCI Greene's programs and services on the basis of his disability in violation of the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

## CAUSES OF ACTION

### COUNT I – Deprivation of Eighth Amendment Right Not to Undergo Cruel and Unusual Punishment
(against every Defendant excluding the DOC)

76.     Plaintiff Chmiel incorporates paragraphs 1 through 75of this Complaint as if fully set forth herein.

77.     Defendants' denial of Plaintiff Chmiel's access to medical services was deliberate indifference to his serious medical needs that violated his right to be free from cruel and unusual punishment as proscribed by the Eighth Amendment of the United States Constitution.

78.     Defendants' failure to perform appropriate and timely diagnostic testing or to treat his diabetic retinopathy for non-medical reasons was deliberate indifference to his serious medical needs that violated his right to be free from cruel and unusual punishment as proscribed by the Eighth Amendment of the United States Constitution.

### COUNT II – Discrimination and Exclusion From Services of a Public Entity in Violation of the Americans With Disabilities Act
(against Defendant Pennsylvania Department of Corrections)

79.     Plaintiff Chmiel incorporates paragraphs 1 through 75 of this Complaint as if fully set forth herein.

80.     Defendant Pennsylvania Department of Corrections discriminated against Plaintiff Chmiel and caused him to be excluded from SCI Greene's programs and services on the basis of his disability in violation of Title II of the Americans with Disabilities Act.

**COUNT III –Discrimination and Exclusion From Services of a Federally Funded Entity in
Violation of the Section 504 of the Rehabilitation Act**
(against Defendant Pennsylvania Department of Corrections)

81.     Plaintiff Chmiel incorporates paragraphs 1 through 75 of this Complaint as if fully set

forth herein.

82.     Defendant Pennsylvania of Corrections, a recipient of federal funds, caused Plaintiff

Chmiel to be excluded from SCI Greene's programs and services on the basis of his disability in

violation of Section 504 of the Rehabilitation Act.

**JURY TRIAL**

83.     Jury trial is demanded.

**REQUESTED RELIEF**

WHEREFORE, Plaintiff David Chmiel requests that the Court grant the following relief:

1.  Declaratory judgment that Defendants violated the Eighth Amendment of the United

    States Constitution, the Americans with Disabilities Act and Section 504 of the

    Rehabilitation Act;

2.  An award of appropriate compensatory and punitive damages against Defendants in favor

    of Mr. Chmiel in an amount to be determined by the finder of fact;

3.  Injunctive relief to ensure that Plaintiffs statutory and constitutional rights are not

    violated in the future;

4.  Reasonable attorney's fees and costs;

5.  Such other relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Alexandra Morgan-Kurtz*
Alexandra Morgan-Kurtz, Esq.
PA ID No. 312631

**Pennsylvania Institutional Law Project**
100 Fifth Ave, Ste. 900
Pittsburgh, Pa 15222
Tel: (412) 434-6175
amorgan-kurtz@pailp.org

Jim Davy
PA ID No. 321631
**Pennsylvania Institutional Law Projec**t
718 Arch Street, Suite 304S
Philadelphia, PA 19106
T: 215-925-2966
jdavy@pailp.org
*pro hac vice pending*

Christine C. Levin
PA ID No. 37807
Judah Bellin
PA ID No. 325907
**DECHERT LLP**
2929 Arch Street
Philadelphia, PA 19104
215-994-2421
Christine.Levin@dechert.com
Judah.Bellin@dechert.com
*pro hac vice pending*