# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DAVID CHMIEL, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PENNSYLVANIA DEPARTMENT OF | ) | Civil No.  18-1691 |
| CORRECTIONS; CHCA KYLE GUTH; CHCA | ) | Magistrate Judge Dodge |
| WILLIAM NICHOLSON; DR. BYUNGHAK JIN; | ) | |
| DR. RUSSELL; DR. ARTHUR SANTOS; DR. | ) | |
| MIN HI PARK; DR. PAUL DASCANI; DR. | ) | |
| ROBERT   VALLEY;   MICHAEL   HICE;   DR. | ) | |
| SMYTH | ) | |
| | ) | |
| *Defendants.* | ) | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT AND MOTIONS TO DISMISS

## I.    INTRODUCTION

Plaintiff David Chmiel has long suffered from uncontrolled or poorly controlled diabetes, placing him at a high risk for diabetic retinopathy – a condition that, untreated, can lead to blindness.  He alleges that the Individual Defendants[1] chose not to administer or ensure that he received diabetic eye examinations necessary to detect this condition, that he developed diabetic retinopathy, and became blind in one eye.  In this lawsuit, Mr. Chmiel seeks compensation and

---

[1]     The "Individual Defendants" include Drs. Jin, Russell, Santos, Park, Dascani, Valley, and Smith, Corrections Health Care Administrators ("CHCAs") Guth and Nicholson, and Michael Hice.   The "Physician Defendants" include just the physicians.   Mr. Hice has answered the Complaint.  Mr. Chmiel is filling an Amended Complaint to supplement his claims against CHCAs Guth and Nicholson and therefore does not address the arguments made in their Motion to Dismiss.    Mr. Chmiel also named Dr. John Robinson as a defendant.  Dr. Robinson has passed away and Mr. Chmiel has notified the Court of his intent to dismiss the claims against him. Dkt. No. 66.

injunctive relief under the Eighth Amendment from the Individual Defendants for their deliberate indifference to his serious medical needs. He also seeks relief from the Pennsylvania Department of Corrections ("DOC") under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") for discriminating against him on the basis of his diabetes and diabetic retinopathy.

One of the Defendants (Michael Hice) has answered the Complaint. All but one (Dr. Santos) of the Physician Defendants contend that Mr. Chmiel failed to identify them in his grievance and has therefore not exhausted his claims as to them. They misread pertinent Third Circuit precedent and ignore numerous district court decisions on what is required in circumstances in which the grievance involves continuous denial of treatment by numerous personnel over a period of years. Drs. Santos and Russell[2] argue in addition that Mr. Chmiel has simply alleged *inadequate* medical treatment, which they assert cannot support a deliberate indifference claim. This argument misreads Mr. Chmiel's claims. Mr. Chmiel is alleging a *total denial* of treatment, which does constitute deliberate indifference. Further, several Defendants argue that Mr. Chmiel's claims are precluded by his failure to obtain a Certificate of Merit before filing his complaint. They simply ignore that this requirement is imposed only in cases of medical malpractice, which is not a claim that Mr. Chmiel brings.

Finally, the DOC argues that Mr. Chmiel failed to state claims under the ADA or the RA because medical decisions cannot form the basis of such claims—but they disregard contrary case law and completely ignore Mr. Chmiel's allegations about his exclusion from *non-medical* prison services. None of the Defendants has shown that Mr. Chmiel failed to satisfy his burdens under

---

[2] *See* Dkt. No. 53 at 7-11; Dkt. No. 56 at 5-7.

either the summary judgment or motion to dismiss standards. This Court should therefore deny Defendants' motions.

## II.  FACTUAL SUMMARY

Plaintiff David Chmiel—who has been incarcerated at SCI-Greene for almost 16 years—was diagnosed with Type 2 diabetes as early as 1999. Am. Compl. ¶¶ 33-34. Since then, Defendants Drs. Byunghak Jin, Min Hi Park, and Paul Dascani repeatedly characterized Mr. Chmiel's diabetes as uncontrolled or poorly controlled in his medical records. *Id.* at ¶ 38. Diabetic retinopathy is a condition frequently associated with diabetes. If detected early enough, it is treatable. If not, it leads to blindness. *Id.* at ¶ 1. Both the National Eye Institute and the American Diabetic Association recommend a dilated eye exam (called a "fundoscopy"), which allows the physician to examine the retina and optic nerve to detect whether a diabetic patient is developing diabetic retinopathy. *Id.* at ¶¶ 23-31. This examination should be done at least every one to two years. *Id.* at ¶ 27. If retinopathy impairs a diabeatic's vision, the patient should receive more frequent examinations. *Id.* at ¶ 28. These examinations must be performed by an optometrist or ophthalmologist, not a general practitioner. *Id.* at ¶¶ 29-30.

Based on these nationally recognized standards of care, the Physician Defendants— who had access to Mr. Chmiel's medical records and were aware of his condition—thus knew or should have known that Mr. Chmiel was at greater risk of developing diabetic retinopathy, the most common cause of vision loss among diabetics. *Id.* at ¶¶ 22, 39-40. But the Physician Defendants failed either to regularly conduct the tests necessary to detect Mr. Chmiel's diabetic retinopathy or to provide any treatment until it was too late to save his vision. *Id*. at ¶ 41. Since at least 2008, the Physician Defendants failed to administer a single fundoscopy to Mr. Chmiel or take any action to ensure that he received one. *Id.* at ¶¶ 35-36; 41-44.

Although the Commonwealth Defendants[3] knew or should have known that Mr. Chmiel had not received a fundoscopy in several years, they failed to schedule appointments for him to receive one. *Id.* at ¶¶ 48-50. Further, they supported SCI-Greene's standard practice to deny fundoscopies to high risk diabetic patients like Mr. Chmiel. *Id.* at ¶ 60. As a direct result of Defendants' complete denial of essential medical care, Mr. Chmiel developed diabetic retinopathy that has caused him to develop blindness and retinal detachment. *Id.* at ¶¶ 51, 61.

Mr. Chmiel first learned that he had diabetic retinopathy in January 2017, when an outside doctor diagnosed him with "early diabetic retinopathy and cataract in both eyes." *Id.* at ¶ 52. One month later he learned that Defendants were culpable for the damage to his vision when an outside surgeon criticized his doctors for not ensuring that he received a comprehensive eye examination sooner—asking him "why did it take so long to bring me to check my eyes check[ed]" —and told him that "it may be to[o] late to save my left-Eye." Dkt. No. 48, Ex. B ("Grievance") at 4.

Once Mr. Chmiel learned that his diminishing eyesight was the direct result of the failure over the years of SCI-Greene staff to detect and treat his diabetic retinopathy, he promptly filed a grievance against "the Medical Department and the DOC" for "[d]eliberate and malicious deprivation of adequate medical care and need in a timely manner," "unethical delay of Eye Care," and violations of his "8th Amendment rights to be free from cruel and unusual punishment," naming specifically "John Mcannany, Mr. Nicholson, Dr. Santos, Mike Hice, Gilmore, Secretary John Wetzel." Grievance at 4. Mr. Chmiel described his outside doctor's concern that "it would be too late to save my left-Eye" and that "due to such a long delay for treatment my Right eye may never get the vision back more than 20%." *Id.* He further noted that he had suffered from poor eyesight for at least two years and that the "medical department [k]new or should ha[ve] known

---

[3] The DOC and CHCAs Nicholson and Guth.

that I had been complaining of eye sight issue for two years and did nothing." Grievance at 5. He added, "[n]ow I am blind in one eye and may lo[]se my eye-sight in the right eye as well." Grievance at 5.

In denying Mr. Chmiel's grievance, a prison official concluded that "there was plenty of attention paid to your eye issues" and that "[r]egardless of treatment, your eyes were damaged naturally due to your diabetes." Grievance at 3. In his appeal, Mr. Chmiel noted that his lawyer "had to get involved to get the medical department to take him to the eye doctor/specialist." Grievance at 2. But SCI-Greene Superintendent Robert Gilmore denied Mr. Chmiel's appeal, stating that "[y]our medical record indicates that you are receiving appropriate medical care and treatment, which is consistent with community standards." Grievance at 1. But this "appropriate medical care and treatment" came several years too late to preserve Mr. Chmiel's vision.

Subsequently, SCI-Greene officials made no attempt to accommodate Mr. Chmiel's vision loss. Am Compl. at ¶ 66. As a result, Mr. Chmiel is excluded from certain prison services and programs. *Id*. Indeed, due to his condition—and SCI-Greene's failure to accommodate it—Mr. Chmiel cannot read books in the prison library, take a prison job, or go out to the prison yard. *Id*. at ¶¶ 67, 70-71. He also struggles to bathe in the prison showers. *Id*. at ¶ 72.

To receive just compensation for these wrongs, Mr. Chmiel filed a complaint alleging Eighth Amendment violations against the Individual Defendants. *Id*. at ¶¶ 78-80. He also brought claims under the ADA and RA against the DOC. *Id*. at ¶¶ 81-84. In response, Defendants filed several motions to dismiss and motions for summary judgment. *See* Dkt. Nos. 27, 48, 51, 53, 56. On June 5, 2019, the Court issued an order notifying the parties that it would treat motions relating to the exhaustion of administrative remedies as motions for summary judgment. *See* Dkt. No. 54. The Court would review the remaining claims under the motion to dismiss standard. *Id.*

## III.    ARGUMENT

### A.    Mr. Chmiel Fully Exhausted His Deliberate Indifference Claims.

Summary judgment is appropriate only where there "is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are material when they "have the potential to alter the outcome of the case." *NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011). And in evaluating whether summary judgment is appropriate, courts must "view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 286 (3d Cir. 2009).

Drs. Jin, Park, Dascani, Smyth, Valley and Russell[4] all contend that because Mr. Chmiel did not name them personally in his grievance, his claims against them must be dismissed on failure to exhaust grounds. Dkt. No 48 at 14-15; Dkt. No. 51 at 9; Dkt. No. 56 at 3-4. This is not the law. The text of Mr. Chmiel's grievance shows that he substantially complied with the DOC's grievance procedures by specifically identifying several culpable individuals—including one SCI-Greene doctor—and SCI-Greene's "Medical Department." He thereby alerted SCI-Greene officials to his underlying problem—that Defendants had denied him necessary treatment for his diabetic retinopathy—and that individuals other than those specifically named may have been involved. Further, it was impracticable for Mr. Chmiel to identify each doctor who treated him (or more specifically, failed to treat him) over the course of many years. Not only was he unaware of each doctor's personal involvement, but DOC rules gave him scant time to discover their

---

[4]    We refer to the medical defendants who seek summary judgment on the exhaustion issue— Drs. Jin, Park, Dascani, Smyth, Valley, and Russell—as the "SJ Doctors."

identities before filing his grievance. As a result, Mr. Chmiel's claims were not procedurally defaulted. Thus, this Court should not grant summary judgment to the SJ Doctors.

i. The Text of Chmiel's Grievance Confirms That He Exhausted His Claims.

The Supreme Court has emphasized that "nothing in the [PLRA] imposes a 'name all defendants' requirement." *Jones v. Bock*, 549 U.S. 199, 218 (2007); *see also* Dkt. No 48 at 13. And "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Id*. at 219. Rather, "[c]ompliance with prison grievance procedures . . . is all that is required by the PLRA to properly exhaust." *Id*. at 218. The "primary purpose of a grievance is to alert prison officials to a problem, not to provide personal notice to a particular official that he may be sued." *Id*. at 219 (citing *Johnson v. Johnson*, 385 F.3d 503, 522 (5th Cir. 2004)).

Such compliance need only be "substantial." *Spruill v. Gillis*, 372 F.3d 218, 232 (3d Cir. 2004).[5] In a case such as this – alleging a continuing denial of treatment over a period of years – a plaintiff substantially complies with DOC prison grievance procedures—and thus exhausts his claim—simply by "alert[ing] prison officials to the underlying problem, with or without the names of individual defendants." *Merritt v. Fogel*, No. 07–1681, 2010 WL 3489152, at *2 (W.D. Pa. July 23, 2010), *report and recommendation adopted*, No. 07-1681, 2010 WL 3448618 (W.D. Sept. 1, 2010). In *Merritt v. Fogel*, the plaintiff alleged that SCI-Greene medical staff had denied him

---

[5]    The SJ Doctors premise their entire argument on language from *Spruill*, a case in which the defendant was not named either specifically or by job description in the grievance. Here, of course, Mr. Chmiel did make reference to the "Medical Department." Moreover, *Spruill* was premised on the logic that the purpose of the prison grievance process was to "put the prison officials on notice of the persons claimed to be guilty of wrongdoing." *Id.* at 234. This rationale was rejected by the Supreme Court decision in *Jones* three years later, which expressly held that this is ***not*** the purpose of the requirement. And finally, *Spruill* in fact allowed for the possibility that a grievance could be sufficient even if it does not name each potential defendant. 372 F.3d at 234 (noting that identification is "mandatory, ***or nearly so.***") (emphasis added).

medical treatment for Hepatitis C. *Id*. at *1. This court held that he had substantially complied with DOC protocols by stating in his grievances that "he had repeatedly been denied treatment over the course of several years for his medical condition." *Id*. at *3. In so doing, he had "alerted [SCI-Greene] prison officials to the underlying problem, i.e., the failure to provide [him] with necessary medications, and ***that personnel other than those actually named might have had some hand in the constitutional deprivation***." *Id*. at *2-3 (emphasis added). This rule tracks with the most recent version of the DOC's grievance procedures, which states that "[t]he inmate shall identify *individuals*"—not *every* individual—"directly involved in the event(s)." DC–ADM 804 1.A.11.b (attached as Exhibit A).

Other courts agree that prisoners substantially comply with administrative procedures when they bring grievances against prison departments generally rather than specific individuals within those departments. *See e.g., Young v. Good*, No. 04-407, 2008 WL 4816474, at *4 (W.D. Pa. Nov. 4, 2008) (grievance identifying "food services" sufficiently identified food services supervisors later named as defendants); *Chimenti v. Mohadjerin*, No. 01-0273, 2008 WL 2551603, at *5 (M.D. Pa. June 24, 2008) (Vanaskie, J.) (grievance naming "the DOC" had "fairly encompassed" the DOC secretary "even though [he was] not specifically named"); *Gregory v. Santos*, No. 07-669, 2010 WL 750047, at *5 (S.D. Ill. Jan. 19, 2010) (grievances referring to the "medical department" were sufficient).

Mr. Chmiel's grievance substantially complied with the DOC's grievance procedures. His grievance listed numerous *individuals* who deprived him of "adequate medical care" for his eyes— "John Mcannany, Mr. Nicholson, Dr. Santos, Mike Hice, Gilmore, Secretary John Wetzel"—and two responsible *entities*: SCI-Greene's "Medical Department" and the DOC. Grievance at 4. He also specifically alleged that he had suffered from poor eyesight for "at least two years" and that

SCI-Greene's medical staff had done "nothing" to treat it. Grievance at 5. Further, he alleged that their "long delay for treatment" was causing him to go blind. Grievance at 4-5.

By specifically identifying SCI-Greene's "medical department" and at least one of his treating physicians in his grievance, Mr. Chmiel put SCI-Greene officials on notice that "personnel other than those actually named" (SCI-Greene's medical staff—including the SJ Doctors) "might have had a hand in the constitutional deprivation." He thus substantially complied with SCI-Greene's grievance procedures and properly exhausted his claims against these Defendants.[6] For this reason alone, this Court should deny Defendants' motion for summary judgment on the exhaustion issue.

> ii. It Was Not Practicable For Mr. Chmiel To Name The SJ Doctors Because He Was Unaware Of—And Did Not Have Time To Determine—Their Personal Involvement In Denying Him Treatment.

Prisoners are only required to name defendants in grievances "if practicable." *Spruill*, 372 F.3d at 234. And it is *not* practicable for a prisoner to name defendants if at the time of the grievance, the prisoner does not know—or could not have known—these defendants' identities. *See Chimenti v. Mohadjerin*, 2008 WL 2551603, at *5 (holding that it was not practicable for

---

[6]  Defendants place great reliance on *Mutschler v. Malena*, No. 09-265, 2012 WL 4057241 (W.D. Pa. Sept. 14, 2012), to support their argument that Mr. Chmiel's general references to the "Medical Department" were insufficient for exhaustion purposes. There, the court held that a prisoner did not exhaust his claims against a nurse when his grievances complained about the "medical department" generally but did not identify her specifically. *Id*. at *9. But the court relied on an older version of DC–ADM 804, which required prisoners to "identify *any* person(s) who may have information that could be helpful in resolving the grievance." *Id*. at *6-7 (emphasis added). As mentioned above, the current version of DC–ADM 804—the one that applied to Mr. Chmiel—does *not* require prisoners to name every individual involved in the misconduct. *See* DC–ADM 804 1.A.11.b. Moreover, it was undisputed that the nurse had not been on duty on any of the days that were the subject of the grievances and therefore was not fairly within the scope of those grievances. *Mutschler*, 2012 WL 4057241 at *3, *5.

plaintiff seeking treatment for Hepatitis C to name defendant in grievance alleging delayed "needed medical treatment" because plaintiff "was not aware of [defendant's] personal involvement until his appeal was pending" and his grievance otherwise "set forth the substance of his present claim against [defendant]"); *see also Abney v. Younker*, No. 13-01418, 2015 WL 10371482, at *8 (M.D. Pa. Feb. 24, 2015), *report and recommendation adopted in* No. 13-01418, 2016 WL 727575 (M.D. Pa. Feb. 24, 2016) (holding that it was not practicable for plaintiff to name his assailants in grievances because he "did not know who was involved in the incident in question"); *Victor v. SCI Smithfield*, No. 08-1374, 2011 WL 3584781, at *8 (M.D. Pa. Aug. 12, 2011) (holding that it was not practicable for prisoner to name the Defendant in his grievance because he "did not bec[o]me aware of Defendant's [] involvement until the final appeal of this grievance was pending").

It was not practicable for Mr. Chmiel to name the SJ Doctors in his grievance. This case concerns a course of conduct spanning at least a decade. Mr. Chmiel first discovered Defendants' deliberate decision to deny him medical treatment on February 24, 2017, when an outside doctor criticized them for "tak[ing] so long" to ensure that he received a comprehensive dilated eye examination. Grievance at 4. At that point he did not know which of the many doctors he had seen in the past decade were personally responsible for denying him medical treatment. As the DOC grievance procedures allow only "15 working days after the event upon which the claim is based" to submit his grievance, *see* DC-ADM 804 1.A.8, Exhibit A, he did not have sufficient time to discover all of their identities.[7] It therefore was not practicable for him to name the SJ Doctors,

---

[7]     In order to identify all individuals who denied him medical treatment over the years, Mr. Chmiel needed access to his medical records. Given the voluminous nature of Mr. Chmiel's medical records, identifying all Defendants would take several hours for an individual with good vision. That process is virtually impossible for one with Mr. Chmiel's severely limited vision. Counsel for Mr. Chmiel can also (and did) request his medical records for

consequently his claims against them are not procedurally defaulted. Thus, this Court should deny

Defendant's motion for summary judgment on the exhaustion issue. [8]

### B. Mr. Chmiel has Adequately Pled Deliberate Indifference by Dr. Russell.

All remaining issues must be addressed under the motion to dismiss standard. To survive

a motion to dismiss a plaintiff need only plead "enough facts to state a claim to relief that is

plausible on its face." *Renfro v. Unisys Corp.*, 671 F.3d 314, 321 (3d Cir. 2011) (citing *Matrixx*

*Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309, 1322 n.12 (2011)). In evaluating Defendants'

motion, the Court must accept all of Plaintiff's factual allegations as true and consider the

complaint in the light most favorable to him. *Byers v. Intuit, Inc.,* 600 F.3d 286, 291 (3d Cir.

2010).

Dr. Russell asks this Court to dismiss Mr. Chmiel's deliberate indifference claim against

him on the grounds that the allegations against him amount to a claim of medical negligence only.

Dkt. No. 56 at 4-7. This argument is misplaced as Mr. Chmiel has adequately pled that Dr. Russell

was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. [9]

---

review, however the process of receiving a signed waiver, requesting the records from the DOC, receiving an invoice and ultimately receiving the records routinely takes well over forty-five days.

[8]  Dr. Russell adds the argument that Mr. Chmiel did not exhaust his claims because the grievance "fails to encompass a time that even arguably involved his care." Dkt , No. 56 at 4. This is simply incorrect. First, as Dr. Russell notes, he was still caring for Mr. Chmiel in 2016, which is squarely within the time period encompassed by the grievance. Second, fairly read the grievance is complaining about a course of conduct that has been on-going for years. Mr. Chmiel's grievance attributed his permanent vision loss to his "long delay for treatment" and to the fact that he "couldn't see for *over* two years" and that the "medical Department . . . did nothing" during that time (emphasis added).

[9]  If necessary, this Court should grant Mr. Chmiel leave to amend to add additional specificity regarding the inaction of Defendants Russell and Santos. The Federal Rules "instruct[] courts to freely give leave to amend when justice so requires." *Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017). And "district courts *must* offer amendment in civil rights

The Eighth Amendment prohibits prison officials from being "deliberately indifferent" to a prisoner's "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A prisoner's medical need is "serious" if a physician diagnoses it as requiring treatment or if it is so obvious that a lay person could easily recognize the necessity for a doctor's attention. *See Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). Prison officials are deliberately indifferent to these needs when they "know[] of the need for medical care" but "intentional[ly] refus[e] to provide that care." *Spruill*, 372 F.3d at 235 (citations and internal quotations omitted). Prison officials are likewise deliberately indifferent to "an excessive risk to inmate health" when "the excessive risk was so obvious that the official must have known of the risk." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001).

Mr. Chmiel's diabetic retinopathy is unquestionably a serious medical need. *See Kuhne v. Fla. Dep't of Corr.*, 745 F.3d 1091, 1096 (11th Cir. 2014) (noting that "defendants rightly do not dispute that [plaintiff's] proliferative diabetic retinopathy constituted a serious condition requiring medical treatment"); *Stringham v. Bick*, No. 09-0286, 2013 WL 5603466, *46 n.2 (E.D. Cal. Oct. 11, 2013) (finding that prisoner's diabetic retinopathy was a "serious medical need[]"). Dr. Russell does not dispute this; rather he argues that the standard of deliberate indifference is not met when some significant level of medical care has been provided. He then claims that because he "saw and examined [Mr. Chmiel] and provided a new prescription for his *changing vision,*" Dkt. No. 56 at 7 (emphasis added), the Complaint must be dismissed as to him. But Dr. Russell misreads Mr. Chmiel's complaint.

---

cases . . . when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." *Id.* at 151 (emphasis added). Dr. Santos acknowledges this point by moving for a more definite statement. *See* Dkt. No. 53 at 13-14.

Mr. Chmiel alleged that Dr. Russell was deliberately indifferent to his condition by stating that Dr. Russell (1) knew about his high risk for developing diabetic retinopathy, *see* Am. Compl ¶¶ 39-40, and (2) "deliberately chose not to administer an annual fundoscopy to Plaintiff Chmiel." *Id*. at ¶ 41. Mr. Chmiel is *not* alleging that Dr. Russell provided *inadequate* treatment for his diabetic retinopathy. Rather, he is arguing that Dr. Russell provided *no* treatment whatsoever because Dr. Russell did not perform the eye examinations that screen for and prevent it. Indeed, Mr. Chmiel specifically alleges that Dr. Russell did *nothing* to treat his diabetic retinopathy —Mr. Chmiel's "underlying problem" and for at least ten years did not even attempt to diagnose it. *Id*. at ¶ 37.[10] A prescription for a new set of eyeglasses is simply not treatment for diabetic retinopathy.[11] *Id*. Mr. Chmiel has thus sufficiently alleged that Dr Russell has "intentional[ly] refus[ed] to provide [] care." *Spruill*, 372 F.3d at 235. Therefore, this Court should not dismiss Mr. Chmiel's deliberate indifference claim against Dr. Russell.

### C. Mr. Chmiel Sufficiently Alleged an Eighth Amendment Claim Against Dr. Santos.

Likewise, Mr. Chmiel's Eighth Amendment claim against Dr. Santos should not be dismissed. As with Dr. Russell, Mr. Chmiel alleged that Dr. Santos (1) knew that Mr. Chmiel was at high risk for developing diabetic retinopathy, Am. Compl. ¶¶ 39-40 and (2) nevertheless

---

[10]     Dkt. 56 at 5. Moreover, *Pearson* and *McClain* are inapplicable because these were summary judgment cases and we are in the motion to dismiss stage—so Mr. Chmiel need only *state a plausible claim* for deliberate indifference, whereas the *Pearson* and *McClain* plaintiffs were obligated to "offer[] sufficient evidence for a reasonable jury to find in [their] favor." *Pearson*, 850 F.3d at 535; *see also McClain*, 2013 WL 5272816 at *4. And as discussed above, Mr. Chmiel has satisfied his burden.

[11]     Rather, the National Eye Institute has stated the diabetic retinopathy is treated with scatter laser surgery or injection therapy. *Facts About Diabetic Eye Disease*, National Eye Institute, *available at* https://bit.ly/1GLSaz7.

"deliberately chose not to administer an annual fundoscopy." *Id*. at ¶ 41. He thus has stated a sufficient Eighth Amendment claim to satisfy a motion under Rule 12(b)(6).

Dr. Santos mischaracterizes Mr. Chmiel's allegations against him as a "mere disagreement with the medical judgment of his treating providers . . . and with the treatment he was provided." Dkt. No. 53 at 10. As discussed in Section III.B, *supra*, Mr. Chmiel alleged that SCI-Greene's medical staff—including Dr. Santos—*never* provided the necessary treatment for Mr. Chmiel's diabetic retinopathy. Am. Compl. ¶ 41. Mr. Chmiel thus is not second-guessing Dr. Santos's "medical judgment" —rather, he is challenging Dr. Santos's deliberate disregard of his responsibility to ensure that Mr. Chmiel received a fundoscopy, which in turn would have led to treatment for diabetic retinopathy.

Dr. Santos thus wrongly relies on *Estelle v. Gamble*, where the Supreme Court found no deliberate indifference because prison physicians had administered *some* treatment for a patient's medical needs. *Estelle*, 429 U.S. at 107. Here, in contrast, Dr. Santos provided *no* treatment. Indeed, courts readily distinguish the legal insufficiency of cases in which a plaintiff alleges "regular and recurring treatment" from the sufficiency of those where the plaintiffs received cursory or non-existent treatment. *Compare Coley v. Iwaugwu*, 303 Fed. App'x 109, 111 (3d Cir. 2008) (finding no deliberate indifference where medical personnel were responsive to plaintiff's needs and provided extensive medical care) *with Brower v. Corizon*, Civ. No. 15-5039, 2016 WL 5166330, at *4-*5 (E.D. Pa. Sept. 20, 2016) (finding that plaintiff stated a claim for deliberate indifference by alleging that doctor failed to provide any treatment) *and Haskins v. Pennsylvania*, Civ. No. 14-157, 2016 WL 7009227, *2, *4 (W.D. Pa. Nov. 14, 2016) (concluding deliberate indifference to plaintiff's eye pain and vision loss may exist where doctor made a "cursory exam of Plaintiff's eye" and failed to obtain proper treatment for plaintiff); *see also Ancata v. Prison*

*Health Servs., Inc.,* 769 F.2d 700, 704 (11th Cir. 1985) (citing *Tolbert v. Eyman*, 434 F.2d 625, 626 (9th Cir. 1970) (observing that cursory medical care may state a constitutional violation).

Mr. Chmiel is not questioning the "treatment he was provided"—he is alleging that Dr. Santos provided *no* treatment. Thus, Mr. Chmiel has sufficiently alleged that Dr. Santos has "intentional[ly] refus[ed] to provide [] care." *Spruill*, 372 F.3d at 235. For this reason, this Court should not dismiss Mr. Chmiel's Eighth Amendment claim against Dr. Santos.[12]

> D. <u>Mr. Chmiel Has Stated an Americans With Disabilities Act Claim and a Rehabilitation Act Claim Against the DOC.</u>

The DOC argues that Mr. Chmiel's claims fall outside the ADA and RA because they "are entirely about medical decisions of doctors in deciding how to treat or diagnose Plaintiff's alleged diabetic retinopathy." Dkt. No. 27 at 7. They contend that "medical decisions or decisions premised or based upon medical determinations do not fall within the scope of the ADA" or the RA. *Id*. This argument simply misses the point of Mr. Chmiel's complaint against the DOC and misconstrues the breadth of the ADA.

---

[12] Dr. Santos also argues that this Court should dismiss Mr. Chmiel's punitive damages claim. Dkt. No. 53 at 14-17. But "[c]ourts generally permit a claim for punitive damages to survive a motion to dismiss if the complaint sets out a cognizable deliberate indifference claim." *Talley v. Gilmore*, No. 16-1318, 2017 WL 2461453 (W.D. Pa. June 7, 2017) at *4. And as discussed above, Mr. Chmiel has satisfied this burden. Further, in a remarkably similar case, a federal court in Pennsylvania held that a prisoner stated facts that could support a punitive damages award under federal law by alleging that "defendants acted with deliberate indifference, and by failing to act appropriately in response to the plaintiff's emergent eye condition, caused the plaintiff to wait *months* for a consultation with an ophthalmologist . . . thereby causing the plaintiff to suffer permanent physical damage to his eye and to lose visual acuity." *Law v. Corr. Care, Inc.*, No. 13-2407, 2014 WL 1767129 (M.D. Pa. May 2, 2014) at *5 (emphasis added). Defendants in this case acted *more* egregiously that the *Law* defendants: they caused Mr. Chmiel to wait *years*, not months, before he received the necessary treatment for his eye condition. Thus, Mr. Chmiel has stated a claim for punitive damages.

Congress enacted the ADA "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). The protections of the ADA apply to the activities of both state and federal prisons. *Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209-10 (1998). The ADA is "a remedial statute, designed to eliminate discrimination against the disabled in all facets of society" and "must be broadly construed to effectuate its purposes." *Schorr v. Borough of Lemoyne*, 243 F. Supp. 2d 232, 235 (M.D. Pa. 2003) (citing *Tcherepnin v. Knight*, 289 U.S. 332, 335 (1967)).[13]

To state a claim under the ADA, a person must allege that he "(1) is a qualified individual with a disability; (2) was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of [his] disability." *Scherer v. Pa. Dep't of Corr.*, No. 2004-191, 2007 WL 4111412, at *8 (W.D. Pa. Nov. 16, 2007). Mr. Chmiel is undoubtedly a qualified individual with a disability, as a result of both his near blindness and his diabetes, a fact that the DOC does not dispute. Am. Compl. ¶¶ 75-76; Dkt. No. 27 at 7; *see also Nawrot v. CPC Int'l*, 277 F.3d 896, 903-05 (7th Cir. 2002) (holding that plaintiff established that his diabetes was a disability); *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999) ("[P]eople with monocular vision ordinarily will meet the [ADA's] definition of disability.").

The Supreme Court has observed that "modern prisons provide inmates with many recreational activities, medical services, and educational and vocational programs," all of which are covered by the ADA. *Yeskey,* 524 U.S. at 210 (quotations omitted). "[U]nder a common

---

[13]     The substantive standards for determining liability under the ADA and RA are the same, so this brief will only refer to the ADA. *McDonald v. Pa.*, 62 F.3d 92, 95 (3d Cir. 1995).

understanding of the terms, the prison and all of its facilities (i.e., the phone, the library, the yard, and meals) constitute services and programs . . . to which the ADA applies." *Owens v. Chester Cty.*, No. 97-1344, 2000 WL 116069, at *11 (E.D. Pa. Jan. 28, 2000). Prisoners state a viable ADA claim when the allege that they were excluded from their prison's "services, programs, or activities" by stating that prison medical officials (1) denied them treatment due to their disability and that (2) this disability causes them to be excluded from prison programs and services. *See Hollihan v. Pa. Dep't of Corr.*, 159 F. Supp. 3d 502, 509-510 (M.D. Pa. 2016) (prisoner-plaintiff stated claims under ADA and RA by alleging that that Defendants "categorically den[ied] his requests for surgery under the Department's cataract policy" and that these denials "caused him to be excluded from various programs and services at [the prison] because of his disability"); *Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 286-87 (1st Cir. 2006) (denying summary judgment for defendant on plaintiff's ADA claims when plaintiff brought evidence showing that prison medical officials and corrections officers denied him access to prescription medication due to his ALS). Likewise, prisoners state cognizable claims under the ADA when they allege that a prison has instituted a systemic policy to deny treatment to people on the basis of their disabilities. *See Hernandez v. Cty. of Monterey*, F.R.D. 132, 151 (N.D. Cal. 2015) (noting that ADA and RA discrimination claims "requir[e] injunctive relief from system-wide policies and practices, which institutionalize a failure to provide necessary accommodations to inmates with all types of disabilities").

Contrary to the DOC's claim that Mr. Chmiel's lawsuit is "entirely about medical decisions of doctors," he alleged that the DOC directly and independently excluded him from two types of prison services. First, Mr. Chmiel alleged that the DOC denied him *medical treatment* due to his diabetes—and that it did not "deny proper chronic care or regular diagnostic exams wholesale to

prisoners suffering from other chronic conditions." Am. Compl. ¶¶ 62-63. He specifically alleged that the DOC engineered this discriminatory treatment by "approv[ing]" SCI-Greene's "standard practice" to deny this treatment to patients with diabetes like Mr. Chmiel. *Id.* at ¶¶ 59-60. These allegations plainly support Mr. Chmiel's claims under the ADA and RA. *See Hollihan*, 159 F. Supp. 3d at 509-510; *Kiman*, 451 F.3d at 286-87.

Second, Mr. Chmiel alleged that the DOC denied him *non-medical prison services* such as yard and shower access by failing to accommodate his diabetic retinopathy. Am. Compl. ¶¶ 66-71. The implementing regulations of the ADA "make clear" that discrimination "occurs when disabled persons, because of their disability, cannot derive a benefit from the state's services . . . even though [they] are given the exact same services or benefits as those afforded" to the non-disabled. *Belton v. Georgia*, No. 10-0583, 2012 WL 1080304, at *9 (N.D. Ga. March 30, 2012) (citing 28 C.F.R. §35.130(b)(1)(ii)-(iii)). In other words, a public entity violates the ADA by failing to provide a reasonable accommodation that would allow disabled persons equal access or benefit. *See Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999) ("Discrimination under the ADA encompasses not only adverse actions motivated by prejudice and fear of disabilities, but also includes failing to make reasonable accommodations for a plaintiff's disabilities."). The DOC does not respond to this allegation, which squarely supports a claim for disability discrimination. *See Wareham v. Pa. Dep't of Corr.*, No. 13-cv-0188, 2014 WL 4231280, at *2-*3 (W.D. Pa. Aug. 26, 2014) (holding that defendants might have violated the ADA because plaintiff was excluded from "prison services . . . such as exercise and access to the yard"). Thus, Mr. Chmiel has stated a proper claim under the ADA and RA against the DOC.

### E.  Mr. Chmiel Was Not Obligated To File A Certificate of Merit.

Drs. Valley, Santos, and Russell argue that this Court must dismiss Mr. Chmiel's claims because he did not obtain a Certificate of Merit. *See* Dkt. No. 51 at 9-10; Dkt. No. 53 at 11-13; Dkt. No. 56 at 7-8. But as these Defendants admit, the Pennsylvania Rules of Civil Procedure require plaintiffs to file Certificates of Merit *only* when they allege medical negligence—that "a medical professional deviated from acceptable standards of care." Dkt. No. 51 at 9-10; Dkt. No. 53 at 12; Dkt. No. 56 at 7.  Mr. Chmiel does not bring negligence claims against these Defendants. Rather, he argues that they violated the United States Constitution through deliberate indifference to his serious medical needs.  *See* Am. Compl. ¶¶ 78-80. Thus, Mr. Chmiel is not obligated to file a Certificate of Merit, and the Court should deny Defendants' motions to dismiss on these grounds.

## IV.  CONCLUSION

For the foregoing reasons, this Court should deny Defendants' dispositive motions.   In the alternative, this Court should allow Mr. Chmiel an opportunity to further amend his complaint.


Date: July 26, 2019                                     Respectfully submitted,

*/s/ Alexandra Morgan-Kurtz*
Alexandra Morgan-Kurtz, Esq.
PA ID No. 312631
**Pennsylvania Institutional Law Project**
100 Fifth Ave, Ste. 900
Pittsburgh, Pa 15222
Tel: (412) 434-6175
amorgan-kurtz@pailp.org

Christine C. Levin
PA ID No. 37807
Judah Bellin
PA ID No. 325907
**DECHERT LLP**
2929 Arch Street
Philadelphia, PA 19104

215-994-2421
Christine.Levin@dechert.com
Judah.Bellin@dechert.com

## CERTIFICATE OF SERVICE

I certify that on July 26, 2019, a true and correct copy of the foregoing was served upon all

counsel of record by operation of the Court's Electronic Filing System.

*/s/ Alexandra Morgan-Kurtz*
Alexandra Morgan-Kurtz, Esq.
PA ID No. 312631
Pennsylvania Institutional Law Project
100 Fifth Ave, Ste. 900
Pittsburgh, Pa 15222
Tel: (412) 434-6175
amorgan-kurtz@pailp.org


Christine C. Levin
PA ID No. 37807
Judah Bellin
PA ID No. 325907
DECHERT LLP
2929 Arch Street
Philadelphia, PA 19104
215-994-2421
Christine.Levin@dechert.com
Judah.Bellin@dechert.com